## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL HOME LOAN
MORTGAGE CORPORATION,
8200 Jones Branch Drive
McLean, VA  22102-3110

                             Plaintiff,

      v.

DELOITTE & TOUCHE LLP,
30 Rockefeller Plaza,
New York, NY  10112-0015

                Defendant-Petitioner,

      v.

FEDERAL HOUSING FINANCE AGENCY,
Constitution Center
400 Seventh Street, SW
Washington, D.C.  20024

               Respondent.

Civil Action No: _____

## DELOITTE & TOUCHE LLP'S MOTION TO COMPEL DOCUMENT PRODUCTION BY THE FEDERAL HOUSING FINANCE AGENCY

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................. 1

II.     BACKGROUND ................................................................................................................... 4

        A.      The Freddie Mac Action ........................................................................................... 4
        B.      Deloitte's Efforts To Obtain Discovery From FHFA ............................................... 5
                1.      Deloitte's FOIA And Touhy Requests ......................................................... 6
                2.      Deloitte's Subpoena To FHFA And Narrowed Requests.............................. 8
                3.      FHFA's Refusal To Produce Documents Responding To Deloitte's
                        Narrow Requests .......................................................................................... 10

III.    ARGUMENT ...................................................................................................................... 11

        A.      FHFA's Documents Are Highly Relevant To Deloitte's Defenses And
                Affirmative Defenses .............................................................................................. 12
        B.      Deloitte's Requests Are Appropriately Tailored To Obtain Relevant
                Discovery Without Unduly Burdening The Agency ................................................ 16
                1.      FHFA Cannot Demonstrate That The Burden Imposed By
                        Deloitte's Narrowed Requests Is "Undue" ................................................. 16
                2.      The Law Does Not Require Deloitte To Exhaust All Other
                        Avenues Of Discovery Before Seeking FHFA's Relevant
                        Documents ................................................................................................... 17
        C.      FHFA's Blanket Invocation Of The Qualified Deliberative Process And
                Bank Examination Privileges Cannot Stand ........................................................... 18
                1.      FHFA Has Not Presented Competent Evidence To Establish The
                        Deliberative Process Privilege .................................................................... 19
                2.      FHFA Has Not Presented Competent Evidence To Establish The
                        Bank Examination Privilege ....................................................................... 22
                3.      These Privileges Do Not Apply Because FHFA's Conduct Is At
                        Issue In This Litigation .............................................................................. 24
                4.      Given The Vital Importance Of The Documents At Issue, Good
                        Cause Supports Setting Aside The Asserted Qualified Privileges ............. 25

IV.     CONCLUSION .................................................................................................................. 30

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Ala. Educ. Ass'n v. Bentley,*
No. CV-11-S-761, 2013 WL 124306 (N.D. Ala. Jan. 3, 2013) ..............................................25

*Alexander v. FBI,*
186 F.R.D. 170 (D.D.C. 1999) .........................................................................................25

*Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.,*
267 F.R.D. 1 (D.D.C. 2010) ...............................................................................18, 22, 23

*In re Banco Santos, S.A.,*
No. 10-bk-47543, 2014 WL 5655025 (S.D. Fla. Oct. 31, 2014).....................................23

*Call of the Wild Movie, LLC v. Does 1-1,062,*
770 F. Supp. 2d 332 (D.D.C. 2011)...............................................................................16

*Cantaline v. Raymark Indus., Inc.,*
103 F.R.D. 447 (S.D. Fla. 1984)..........................................................................................9

*Citizens for Responsibility & Ethics in Washington v. DOJ,*
955 F. Supp. 2d 4 (D.D.C. 2013)........................................................................................20

*Cobell v. Norton,*
213 F.R.D. 1 (D.D.C. 2003) ....................................................................................21, 23

*Convertino v. DOJ,*
565 F. Supp. 2d 10 (D.D.C. 2008)...................................................................................13

*Delozier v. First Nat'l Bank of Gatlinburg,*
113 F.R.D. 522 (E.D. Tenn. 1986) .................................................................................24

*In re Denture Cream Prods. Liab. Litig.,*
292 F.R.D. 120 (D.D.C. 2013) ..............................................................................12, 13

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
532 U.S. 1 (2001)..............................................................................................................20

*EPA v. Mink,*
410 U.S. 73 (1973).....................................................................................................20, 22

*In re Exxon Valdez,*
142 F.R.D. 380 (D.D.C. 1992) .........................................................................................18

*Farnsworth v. Procter & Gamble Co.,*
758 F.2d 1545 (11th Cir. 1985) .......................................................................................12

*FHFA v. JPMorgan Chase & Co.,*
  978 F. Supp. 2d 267 (S.D.N.Y. 2013) ................................................................24

*First E. Corp. v. Mainwaring,*
  21 F.3d 465 (D.C. Cir. 1994) ............................................................................27

*Fisher v. Network Software Associates,*
  217 F.R.D. 240 (D.D.C. 2003) .....................................................................16, 17

*Fla. House of Representatives v. United States Dep't of Commerce,*
  961 F.2d 941 (11th Cir. 1992) ...........................................................................21

*In re Franklin Nat. Bank Sec. Litig.,*
  478 F. Supp. 577 (E.D.N.Y. 1979) ...................................................................27

*Grossman v. Schwarz,*
  125 F.R.D. 376 (S.D.N.Y. 1989) ......................................................................21

*In re Honeywell Int'l, Inc. Sec. Litig.,*
  230 F.R.D. 293 (S.D.N.Y. 2003) .........................................................................9

*Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.,*
  No. 05-60860CIV, 2007 WL 1526649 (S.D. Fla. May 22, 2007) .................12, 13

*Jewish War Veterans of the United States of Am., Inc. v. Gates,*
  506 F. Supp. 2d 30 (D.D.C. 2007) .....................................................................12

*Kearney Partners Fund, LLC v. United States,*
  No. 2:10-CV-153, 2013 WL 1966967 (M.D. Fla. May 13, 2013) .......................26

*Lee v. FDIC,*
  923 F. Supp. 451 (S.D.N.Y. 1996) ....................................................................31

*Miccosukee Tribe of Indians of Fla. v. United States,*
  516 F.3d 1235 (11th Cir. 2008) .........................................................................20

*In re Micron Tech., Inc. Sec. Litig.,*
  264 F.R.D. 7 (D.D.C. 2010) ..............................................................................12

*Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC,*
  286 F.R.D. 8 (D.D.C. 2012) ..............................................................................12

*Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.,*
  376 F.3d 1270 (11th Cir. 2004) .....................................................................21, 22

*Nadler v. DOJ,*
  955 F.2d 1479 (11th Cir. 1992) .........................................................................20

*Northrop Corp. v. McDonnell Douglas Corp.,*
  751 F.2d 395 (D.C. Cir. 1984) ..........................................................................20

*Pub. Citizen, Inc. v. Office of Mgmt. & Budget,*
    598 F.3d 865 (D.C. Cir. 2010) ................................................................................23

*Raffa v. Wachovia Corp.,*
    No. 8:02-CV-1443-T-27, 2003 WL 21517778 (M.D. Fla. May 15, 2003) ............................23

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,*
    421 U.S. 168 (1975).................................................................................................20

*Sallah v. Worldwide Clearing LLC,*
    855 F. Supp. 2d 1364 (S.D. Fla. 2012) .................................................................16

*Schreiber v. Soc'y for Sav. Bancorp, Inc.,*
    11 F.3d 217 (D.C. Cir. 1993)....................................................................13, 18, 24

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997)...........................................................................25, 27

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency,*
    145 F.3d 1422 (D.C. Cir. 1998)...............................................................................25

*In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of*
    *Governors of Fed. Reserve Sys.,*
    967 F.2d 630 (D.C. Cir. 1992).........................................................................23, 24, 26

*Sun-Sentinel Co. v. U.S. Dep't of Homeland Sec.,*
    431 F. Supp. 2d 1258 (S.D. Fla. 2006) ...............................................................22

*Touhy v. Ragen,*
    340 U.S. 462 (1951)......................................................................................................6

*U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.,*
    301 F.R.D. 20 (D.D.C. 2014) ...............................................................................12

*In re Veiga,*
    746 F. Supp. 2d 27 (D.D.C. 2010).................................................................18, 19

*Watts v. SEC,*
    482 F.3d 501 (D.C. Cir. 2007).....................................................................................6

*Wiand v. Wells Fargo Bank, N.A.,*
    981 F. Supp. 2d 1214 (M.D. Fla. 2013).................................................................19

*Wolfe v. Dep't of Health & Human Servs.,*
    839 F.2d 768 (D.C. Cir. 1988).................................................................................21

**STATUTES**

Fla. Stat. § 768.81 ...............................................................................................2, 14

**RULES**

Fed. R. Civ. P. 26................................................................................................11, 12, 13

Fed. R. Civ. P. 45................................................................................................1, 12, 13

**REGULATIONS**

12 C.F.R. § 1215, *et al.*................................................................................................6

Defendant Deloitte & Touche LLP ("Deloitte") hereby moves, pursuant to Federal Rule of Civil Procedure 45, for an Order compelling the Federal Housing Finance Agency ("FHFA" or "the Agency") to comply with the subpoena *duces tecum* Deloitte served on March 3, 2015 (the "Subpoena") in connection with *Federal Home Loan Mortgage Corporation v. Deloitte & Touche LLP*, No: 1:14-cv-23713-UU (S.D. Fla., removed Oct. 8, 2014) ("the Freddie Mac Action").[1]  In support of its motion, Deloitte submits as follows.

## I.  INTRODUCTION

This discovery dispute arises from FHFA's unfounded refusal to produce documents that are indisputably relevant to the Freddie Mac Action, a complex civil litigation in which Deloitte faces claims of over $1.3 billion in purported damages.  Despite three separate requests, meet-and-confer discussions spanning nearly five months, and repeated attempts by Deloitte to cooperatively narrow its requests, FHFA has produced only 2700 largely irrelevant documents. FHFA has otherwise refused to provide discovery in this matter, while standing on sweeping, baseless assertions that the narrow tranches of documents Deloitte seeks are privileged, not relevant to the Freddie Mac Action, or unduly burdensome on the Agency.  FHFA's arguments all fail, and it should be ordered to produce the documents at issue without further delay.

Plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac") seeks damages from Deloitte for alleged negligent misrepresentations in Deloitte's audit opinions on the consolidated financial statements of Freddie Mac's self-described business partner, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), for the 2002 through 2008 fiscal years.  Deloitte vigorously denies

---

[1] Deloitte is filing herewith a Declaration of Christopher S. Turner (the "Declaration") and a motion to transfer this Motion to Compel to the Court handling the underlying civil action against Deloitte—the United States District Court for the Southern District of Florida. Exhibits to the Declaration are designated "Ex. __" herein.

1

Freddie Mac's claims, and has asserted numerous dispositive defenses and affirmative defenses in response.

Far from a disinterested non-party in the Freddie Mac Action, FHFA occupies a unique and significant role in the litigation, and has a distinct interest in its outcome. Since September 2008, FHFA has acted as Freddie Mac's conservator. In that capacity, FHFA enjoys "sweeping" authority over Freddie Mac, including "all rights and powers of any stockholder, officer, or director." Ex. A, FHFA-OIG, *FHFA's Conservatorships of Fannie Mae and Freddie Mac: A Long and Complicated Journey*, WPR-2015-002, at 6 (Mar. 25, 2015). "These powers," as FHFA's Director recently observed, "position FHFA to potentially control every aspect of the Enterprises" it oversees. *Id.* Indeed, FHFA Director Melvin Watt "recently testified that FHFA is involved in 'virtually every decision that . . . Freddie Mac make[s].'" *Id.*[2]

Further, Deloitte has identified FHFA as a potential "*Fabre* defendant" in the Freddie Mac Action based on the Agency's demonstrated failure to pursue a June 2008 tip about the very fraud that purportedly caused Freddie Mac's claimed loss. *See* Ex. B, Answer and Affirmative Defenses of Deloitte & Touche LLP (Nov. 14, 2014) [hereinafter "Answer"]. Under Florida law, to the extent FHFA is to blame for Freddie Mac's purported loss, Deloitte's liability—if any—must be reduced correspondingly. *See* Fla. Stat. § 768.81. Information in FHFA's possession is therefore critical to Deloitte.

---

[2] Consistent with that extensive control, FHFA has assumed an active role in the case. The Agency involved itself directly in drafting the agreed protective order between Freddie Mac and Deloitte, which governs discovery and document exchanges between the parties, and affirmatively carved out multiple provisions specifically applicable to FHFA alone. At the Agency's insistence, for example, the protective order authorizes Freddie Mac to disclose Deloitte's confidential discovery materials to certain FHFA personnel—including any of "FHFA's in-house and outside counsel, experts, and consultants who become involved in the prosecution or defense of this Proceeding." Ex. Q, Protective Order ¶ 25(e) (Jan. 26, 2015).

2

For nearly five months Deloitte has used every mechanism at its disposal to diligently seek discovery from the Agency—to little avail. In December 2014 and January 2015, respectively, Deloitte issued requests pursuant to the Freedom of Information Act ("FOIA") and FHFA's *Touhy* regulations, seeking largely the same corpus of underlying documents. Finally, in March 2015, Deloitte served the instant Subpoena, again targeting the same materials. Since that time, Deloitte has prioritized those discrete requests in the Subpoena that Deloitte believes are *most* critical to its defenses and *least* burdensome on FHFA, and has invited the Agency to produce responsive documents on an iterative basis.

In response, FHFA has provided to date only a small set of mostly irrelevant documents it had already collected and produced in prior litigation—along with logs listing nearly as many decidedly relevant documents over which the Agency has sweepingly asserted qualified deliberative process and/or bank examination privileges.[3] Focusing on the documents most critical to the Freddie Mac Action, Deloitte has requested that FHFA produce 104 documents—a mere 4% of those logged. According to the logs, these documents relate to, *inter alia*, a "TBW investigation," "TBW repurchase requirements," and a "TBW employee complaint" concerning the alleged TBW fraud at the core of Freddie Mac's case. Ex. C. FHFA continues to refuse production of these documents by citing inapplicable qualified privileges, which in any event are overcome by good cause in light of these materials' centrality to the Freddie Mac Action.

Consistent with its effort to narrow its requests to only those documents most critical to the Freddie Mac Action, Deloitte also seeks production of several very narrow types of FHFA

---

[3] FHFA has also collected 926 documents from a narrow set of custodians using a narrower set of search terms to which Deloitte agreed. Though it has no obligation whatsoever to do so, *see* p. 9 & n.9 *infra*, Deloitte is reimbursing expenses FHFA incurs in transfer, collection, and review of these documents. FHFA has yet to produce any of these documents.

documents—principally key reports it issued (including related specifically to Freddie Mac) and documents supporting those reports. FHFA has also asserted bank examination and/or deliberative process privileges over these documents, which include reports on FHFA's assessment of key Freddie Mac personnel involved in decisions regarding Freddie Mac's purchases of mortgages from TBW and FHFA's investigation into Freddie Mac's risk management practices regarding TBW. It is hard to fathom documents more central to Deloitte's defenses in the Freddie Mac action. Here too there is good cause for production, notwithstanding any qualified privilege that may apply.

Deloitte respectfully requests an Order compelling the production of certain narrow sets of documents by FHFA, as detailed herein.

## II.   BACKGROUND

### A.   The Freddie Mac Action

In the underlying action, Freddie Mac seeks over $1.3 billion in purported damages from Deloitte, for alleged negligent misrepresentations in Deloitte's audit opinions on TBW's consolidated financial statements for the 2002 through 2008 fiscal years. In so doing, Freddie Mac attempts to shift responsibility to Deloitte for the consequences of its own actions in dealing with TBW, its disregard of warnings, and what turned out to be a collusive fraud orchestrated by TBW and Colonial Bank.[4] Discovery in the Freddie Mac Action is now underway, and, pursuant to the current schedule, must be completed—including all depositions and the exchange of expert reports—by September 4, 2015.

---

[4] According to Freddie Mac's Complaint, this collusive fraud shifted over time. In 2002 and 2003, for example, senior executives at TBW and personnel at Colonial Bank allegedly conspired to conceal overdrafts in TBW accounts, and starting in late 2003, TBW sold interests in fake or double-pledged loans to its co-conspirator, Colonial Bank.

As Freddie Mac's conservator and regulator, FHFA possesses information highly relevant to the issues presented in the lawsuit. Following investigation into Freddie Mac's conduct in relation to TBW, the inspector general for FHFA ("FHFA-OIG") concluded that Freddie Mac effectively ignored numerous "red flags" that could and should have alerted it to the fraud. *See* Ex. D, FHFA-OIG, *Systemic Implications Report: TBW-Colonial Investigation Lessons Learned*, at 6-14 (Aug. 21, 2014) (observing that although "Freddie Mac was aware of circumstances that raised serious questions about TBW's capitalization, capacity, and compliance with repurchase obligations, it effectively waived its applicable guidance and allowed TBW to expand its business volume"). Moreover, FHFA-OIG has revealed that in June 2008—more than a year before the fraud was uncovered—FHFA itself received a tip from a TBW employee that "TBW was fraudulently selling loans to Freddie Mac that TBW had not yet purchased, and that TBW was using the proceeds paid by Freddie Mac to re-pay advances." Ex. E, FHFA-OIG, *Audit of the Federal Housing Finance Agency's Consumer Complaints Process*, AUD-2011-001, at 11 (June 21, 2011). But these "serious allegations of fraud" were "neither pursued to completion" nor "referred to law enforcement authorities for evaluation or possible investigation" because "no standard procedures were in place to assure prompt follow-up." *Id.* Deloitte strongly denies Freddie Mac's claims and has asserted numerous defenses, including that Freddie Mac's own actions—and potentially those of FHFA—are to blame for Freddie Mac's claimed loss. FHFA's documents will bear directly on these defenses.

**B.      Deloitte's Efforts To Obtain Discovery From FHFA**

Deloitte has diligently sought discovery from FHFA over nearly a five-month period

through a FOIA request, a *Touhy* request, and the instant Subpoena.[5]  In response, the Agency has produced only 2,723 documents, which it had previously produced in response to a third-party subpoena in a separate matter, *In re Ocala Funding, LLC*, No. 3:12-bk-4524-JAF (Bankr. M.D. Fla.) (the "Ocala Production"), and three privilege logs containing nearly as many entries.

### 1.   Deloitte's FOIA And *Touhy* Requests

First, on December 9, 2014, Deloitte issued a FOIA request to FHFA seeking documents related to, *inter alia*, TBW and its collusive fraud with Colonial Bank; Freddie Mac and its relationship with TBW; and certain relevant reports FHFA-OIG has published in the years since the TBW fraud.  On February 9, 2015—two months after Deloitte's request—the Agency advised that it would be unable to provide documents in response for at least several more months.  Given the discovery schedule in the Freddie Mac Action, FHFA's proposed timetable would have precluded Deloitte from making constructive use of the Agency's documents.  On April 28, 2015, FHFA advised that, of 8,110 documents identified as of that date as potentially responsive to certain of Deloitte's FOIA requests, *none* would be produced.  *See* Ex G.

On January 12, 2015, Deloitte issued a substantively similar document request pursuant to FHFA's *Touhy* regulations, 12 C.F.R. § 1215, *et al.*[6]  During a telephonic meet-and-confer on January 28, the Agency raised broad objections to Deloitte's requests, but agreed to provide a limited set of documents comprising the prior Ocala Production.  FHFA waited two weeks to turn over the Ocala Production, despite having already collected, reviewed, and produced it in

---

[5] Deloitte's extensive efforts to facilitate FHFA's compliance is detailed in correspondence with the Agency's outside counsel. *See* Ex. F, Apr. 21, 2015 Ltr. from C. Turner to J. Aronica.

[6] Although an agency may, by regulation, prescribe a method for responding to a document request or demand, "the legal basis for any opposition to [a] subpoena must derive from an independent source of law such as governmental privilege or the rules of evidence or procedure." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007); *see Touhy v. Ragen*, 340 U.S. 462 (1951).

another matter. On the same day, the Agency provided logs containing more than 2000 entries and asserting claims based principally on the qualified deliberative process and bank examination privileges. Remarkably, FHFA conceded it had not undertaken *any* "search of its records" in response to Deloitte's requests. Ex. H, Feb. 10, 2015 Ltr. from A. Pollard to C. Turner at 1.

As FHFA has acknowledged, the Ocala Production is narrowly restricted to documents dating from June 2008 through October 31, 2009, and thus covers only a fraction of the relevant time period set forth in Deloitte's requests. *See* Ex. I, Feb. 20, 2015 Ltr. from C. Turner to A. Pollard at 1-2. Moreover, as Deloitte advised FHFA, most documents in the production— including various industry publications and approximately 500 news clippings—are non-responsive. *Id.* at 2. Finally, noting the discovery schedule in the Freddie Mac Action, Deloitte asked FHFA on two separate occasions to confirm by February 25 that it would "comply fully with Deloitte's request" by producing any responsive documents in the Agency's possession "on or before March 13, 2015." *Id.* at 2-3; Ex. J, Feb. 24, 2015 e-mail from S. Barry to J. Ferretti.

At minimum, Deloitte asked that FHFA (1) "collect from . . . the twenty custodians identified [in connection with its prior Ocala Production] all documents falling within the relevant time period set forth in Deloitte's request and not otherwise covered by the Ocala Production—i.e., dating from May 1, 2002 through May 31, 2008, and from October 31, 2009 through the present";[7] (2) use "reasonable search terms to identify relevant documents from both that collection and FHFA's initial collection in connection with the Ocala Production"; and (3) confirm whether it "intend[ed] to stand on the privilege claims set forth in the Ocala Production

---

[7] This period squarely aligns with the allegations in the Freddie Mac Action. It also corresponds with the time during which FHFA (or its predecessor, the Office of Federal Housing Enterprise Oversight ("OFHEO")), served as Freddie Mac's regulator and/or conservator.

privilege logs," and whether it would produce "the many documents listed in the privilege logs for which no privilege claim is asserted." *Id.* (citing, *inter alia*, FHFA_0013706). In response, FHFA agreed only generically "to comply with all obligations under [the Agency's] Touhy regulations," and specifically refused to agree to a deadline for its response. Ex. K, Feb. 25, 2015 e-mail from J. Aronica to S. Barry.

In meet-and-confer discussions the following week, Deloitte again stressed its need to receive at least a meaningful measure of responsive materials in the Agency's possession by mid-March. FHFA responded, in no uncertain terms, that it did not intend to produce further materials by that time. By March 1, FHFA still had provided only the Ocala Production. Four months after Deloitte issued its request, FHFA still has not produced any of the hundreds of documents in its privilege logs as to which no specific privilege is claimed.[8]

### 2.    Deloitte's Subpoena To FHFA And Narrowed Requests

On March 3, 2015, having exhausted the possibility of timely receiving additional documents in response to its *Touhy* request, Deloitte served the instant Subpoena. Substantively, the Subpoena is coextensive with Deloitte's FOIA and *Touhy* requests, and seeks material related to key issues underlying Freddie Mac's claims and Deloitte's defenses. FHFA served its Objections and Response on March 16, contesting the Subpoena on relevance and overbreadth grounds, as unduly burdensome, and as needlessly duplicative of Deloitte's prior requests. Further, FHFA indicated it would "not produce *any* documents absent" Deloitte's agreement to reimburse the Agency's compliance expenses.

---

[8] FHFA purports to withhold those documents as non-responsive, because it deemed the documents not responsive in the context of the Ocala bankruptcy. But it does not necessarily follow that the documents are not responsive to Deloitte's requests. Notwithstanding Deloitte's written request, FHFA has provided no information to justify its withholding of these documents.

In an attempt to facilitate FHFA's timely production of documents critical to the Freddie Mac Action, Deloitte has undertaken extensive efforts to distill and prioritize its requests. These narrowing efforts culminated in a March 16, 2015 e-mail setting forth two limited sets of discrete requests. First, counsel for FHFA confirmed during a telephonic meet-and-confer that while the Ocala Production spans only part of 2008 and 2009, the Agency had collected data covering the *full* tenure of all 20 of the underlying custodians, such that there would be little cost associated with compiling their information for Deloitte's relevant time period. Even still, Deloitte ultimately asked FHFA to review only the *ten* most relevant custodians' files, utilizing just *five* basic search terms. *See* Ex. L, Mar. 16, 2015 e-mail from C. Turner to J. Aronica and J. Ferretti. In addition, while Deloitte does not believe it has an obligation to absorb FHFA's compliance costs, Deloitte agreed to reimburse the Agency up to $5,000 for threshold scoping work in connection with that data, and then up to another $10,000 to collect, review, and produce responsive materials by applying search terms to FHFA's custodial data.[9]

Second, Deloitte requested that FHFA separately provide four discrete sets of documents that are especially critical to Deloitte's case and minimally burdensome to collect. Deloitte believes these materials may already be compiled in, or otherwise can easily be collected from, FHFA's files. These include, for example, a report issued by FHFA's Office of Governance, as well as materials sent to or received from FHFA-OIG in connection with investigations culminating in FHFA-OIG reports addressing issues at the core of the Freddie Mac Action.

---

[9] Having significantly narrowed its Subpoena *and* paid for the Agency's data collection, transfer, and scoping work, Deloitte did more than it was required when it agreed to reimburse the reasonable expenses FHFA will incur in complying with the discrete requests in question. "Typically, a non-party is required to absorb the costs of complying with a subpoena duces tecum." *Cantaline v. Raymark Indus., Inc.*, 103 F.R.D. 447, 450 (S.D. Fla. 1984). Here, moreover, FHFA "is not a classic disinterested non-party." *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (denying cost-shifting request).

Following these discrete requests, the parties met and conferred multiple times concerning FHFA's response. At the Agency's invitation on April 8, 2015, Deloitte identified certain narrow categories of entries in the Ocala Production privilege logs as to which Deloitte's need for the documents overrides any claimed qualified privilege. *See* Ex. M, Apr. 8, 2015 e-mail from S. Barry to J. Ferretti. These include documents described in the logs as discussing (1) a "TBW employee complaint," (2) a "TBW Investigation" or "TBW and Colonial Investigation," (3) TBW repurchases, and (4) TBW counterparty risk. *Id.*

### 3.    FHFA's Refusal To Produce Documents Responding To Deloitte's Narrow Requests

During a telephonic meet-and-confer on April 9, 2015, FHFA indicated it did not presently intend to produce *any* of the discrete tranches of documents Deloitte requested on March 16. Specifically:

- As to the request seeking "[a]n unredacted copy of FHFA Office of Governance Report, Freddie Mac Key Management Assessment (Sept. 26, 2008), and documents relating to this report," FHFA asserts deliberative process and bank examination privileges as to the requested materials in their entirety and is withholding these documents accordingly.

- As to the request seeking "[a]n unredacted copy of FHFA-OIG, Evaluation of the FHFA's Oversight of Freddie Mac's Repurchase Settlement with Bank of America, EVL-2011-006 (Sept. 27, 2011), and documents relating to this report," FHFA initially advised that it was unable to locate an unredacted copy of the report—or any related documents—in its files. It has since located or acquired a copy of this report and continues to refuse to produce this document to Deloitte based on the same qualified privileges.

- As to the request seeking "[m]aterials FHFA sent to or received from Freddie Mac or FHFA-OIG in connection with" certain reports published by FHFA-OIG, FHFA indicated it is not currently undertaking an independent collection of materials concerning *any* of the six reports identified.

In addition, as to documents described in the Ocala Production privilege logs as relating to a "TBW Investigation" or "TBW and Colonial Investigation," FHFA explained during the April 9 call that it had investigated Freddie Mac's risk management concerning TBW, and that a report was generated based on that investigation. Upon learning of the Agency's vitally germane

inquiry, Deloitte requested that FHFA produce a copy of that report and any related materials pursuant to the Subpoena. *See* Ex. N, Apr. 9, 2015 e-mail from C. Turner to J. Aronica and J. Ferretti. On May 1, 2015, FHFA confirmed its refusal to produce this report, citing the deliberative process and bank examination privileges.

Ultimately, in the almost five months since Deloitte's first request, and despite Deloitte's significant cooperation and narrowing efforts, the Agency has yet to produce a single document beyond the modestly-sized and mostly irrelevant Ocala Production.

Time is of the essence. The current schedule in the Freddie Mac Action imposes a September 4, 2015 deadline for all discovery—including fact and expert depositions, and expert reports. Deloitte thus must begin fact depositions this month. Deloitte therefore emphasized to FHFA by letter on April 21, 2015 its need for a prompt resolution of any outstanding disputes concerning the Subpoena, either through the Agency's agreement or judicial intervention. *See generally* Ex. F. In response, FHFA withdrew its privilege designation as to 23 documents specifically identified by Deloitte and produced in redacted form the same number of other previously-withheld documents. But the Agency reiterated its refusal to produce any version of 43 documents or to remove redactions from 23 documents. The Agency also confirmed its refusal to produce other requested documents, including the FHFA and FHFA-OIG reports and supporting materials on, *inter alia*, privilege grounds. Deloitte has exhausted its efforts to resolve these issues cooperatively, and the issues therefore are ripe for disposition by the Court.

## III.   ARGUMENT

The Federal Rules of Civil Procedure authorize broad discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "[T]he general policy favoring broad discovery is particularly applicable where, as here, the court making the relevance determination has jurisdiction only over the discovery dispute, and

hence has less familiarity with the intricacies of the governing substantive law than does the court overseeing the underlying litigation." *Jewish War Veterans of the United States of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007) (citation omitted).

As a corollary, "[l]imiting discovery . . . pursuant to Rule 26 and/or Rule 45 'goes against courts' general preference for a broad scope of discovery.'" *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014); *see also Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) ("The Federal Rules of Civil Procedure strongly favor full discovery whenever possible."). "The person objecting to production has a heavy burden to show that the subpoena should not be enforced." *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012); *see also In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) ("The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged."). FHFA cannot meet that heavy burden here. The documents FHFA withholds are indisputably relevant to the Freddie Mac Action (*see* Section III.A *infra*), are not burdensome to produce—particularly given Deloitte's narrowing effort and assumption of costs (*see* Section III.B *infra*), and either are not protected by a bank examination or deliberative process privilege or should be produced based on "good cause" that overcomes those qualified privileges (*see* Section III.C *infra*).

## A.    FHFA's Documents Are Highly Relevant To Deloitte's Defenses And Affirmative Defenses

"For purposes of discovery, relevance is liberally construed." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013); *see also Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 05-60860CIV, 2007 WL 1526649, at *1 (S.D. Fla. May 22, 2007) ("[I]t is well established that courts must employ a liberal discovery standard."). "The term relevance . . . is broadly construed to include information which is not admissible at the trial if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence." *Convertino v. DOJ*, 565 F. Supp. 2d 10, 12 (D.D.C. 2008). "Discovery obtained from a nonparty pursuant to Rule 45 has 'the same scope as provided in Rule 26(b).'" *Denture Cream*, 292 F.R.D. at 123 (citation omitted). Thus, "with respect to a Rule 45 subpoena, '[a] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" *Id.* (citation omitted). A resisting party bears the burden of establishing "that the requested discovery at issue has *no possible bearing* on the claims and defenses in th[e] case." *Jeld-Wen*, 2007 WL 1526649, at *2 (emphasis added).

The FHFA documents Deloitte seeks here are highly relevant to Deloitte's defenses. As Freddie Mac's regulator, FHFA—and its predecessor, OFHEO—directly reviewed Freddie Mac's activity during the time period at issue. Documents reflecting what Freddie Mac did—or did not—communicate to FHFA and OFHEO, and vice versa, may bear on Freddie Mac's own negligence in ignoring, or failing to take action with respect to, risks at TBW. *Cf. Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 222 (D.C. Cir. 1993) ("An inconsistency between [a party's] own records—which are indeed available from the [party]—and the information it provided to [regulators] could be relevant to the [party's] scienter."). In general, information conveyed to and from FHFA is critical to understanding Freddie Mac's fault for its asserted loss.

In addition, Deloitte has identified FHFA as a potential *Fabre* defendant in the Freddie Mac Action. Under Florida law, any liability of Deloitte must be reduced by the percentage of fault attributable to any persons or entities who caused or contributed to Freddie Mac's purported loss. *See* Fla. Stat. § 768.81. To that end, Deloitte asserted as an affirmative defense in its Answer that "Freddie Mac's claim against Deloitte is barred, or reduced in whole or in part, by the fault of," among others, "[FHFA] and [OFHEO], in connection with, *inter alia*, its oversight

of Freddie Mac and other entities engaged in transactions with or involving TBW, Ocala

Funding, and/or Colonial Bank." Answer at 39. In June 2008, for instance, OFHEO and FHFA

received a tip that Freddie Mac was selling duplicate loans—a core aspect of TBW's and

Colonial Bank's alleged collusive fraud. Consequently, questions of what FHFA knew about the

fraud, when it knew that information, and what actions it took (or did not take) as a result are

central to the case. Further, the discrete sets of documents Deloitte has requested and FHFA has

refused to produce are not just relevant, but critical, to the Freddie Mac Action:

**An unredacted copy of FHFA Office of Governance Report, Freddie Mac Key**

**Management Assessment (Sept. 26, 2008), and documents relating to this report:** FHFA-

OIG described the findings of this report as follows:

> Freddie Mac senior business executives fostered a corporate culture in which the
> most senior person in the Risk Oversight Division, the Chief Enterprise Risk
> Officer, was excluded and his team's advice was disregarded. In particular, OG
> found that multiple senior business executives had disregarded direct advice
> concerning the risks inherent with the Lehman short-term unsecured loans.
> Moreover, OG discovered evidence of deliberate efforts by executives to exclude
> credit risk management officers from participating in key investment decisions
> and to restrict credit risk management personnel from interacting with Freddie
> Mac's previous CEO.

Select Freddie Mac documents indicate Freddie Mac similarly ignored credit risk management

officers' advice in continuing to purchase loans from TBW notwithstanding the known risks of

doing so. FHFA analysis undergirding this conclusion and indicating it was a systemic problem

at Freddie Mac not limited to its evaluation of TBW is critical to Deloitte's defense.

**An unredacted copy of FHFA-OIG, Evaluation of the FHFA's Oversight of Freddie**

**Mac's Repurchase Settlement with Bank of America, EVL-2011-006 (Sept. 27, 2011), and**

**documents relating to this report:** Freddie Mac's claimed loss arises out of loans that Freddie

Mac purchased from TBW and has since determined it could have required TBW to repurchase

had TBW been solvent. Freddie Mac's repurchase practices are thus central to Deloitte's

14

understanding of, and defense against, Freddie Mac's claimed loss.   Similarly, understanding how Freddie Mac's has resolved repurchase claims involving other sellers will shed light on how Freddie Mac would have resolved TBW repurchase claims if TBW still existed or other sellers' repurchase claims as to the same loans if it did not transact with TBW.   Such information is thus central to understanding and assessing Freddie Mac's claimed losses.

**Materials FHFA sent to or received from Freddie Mac or FHFA-OIG in connection with certain reports published by FHFA-OIG:**  Deloitte has identified six public FHFA-OIG reports, including one report titled "TBW-Colonial Investigation Lessons Learned," as profoundly relevant to the Freddie Mac action.  It has requested of FHFA only the materials that FHFA sent to or received from Freddie Mac or FHFA-OIG in connection with these reports. This is not a heavy lift.   These documents are important to support or contextualize the conclusions FHFA-OIG has published.

**A copy of the report generated based on FHFA's investigation of Freddie Mac's risk management concerning TBW and documents supporting that report:**  Several weeks ago, in discussing FHFA's production efforts, counsel for FHFA mentioned a report FHFA generated regarding its investigation of Freddie Mac's risk management failures in its relationship with TBW.  These failures are core to Deloitte's challenges to the reliance and causation elements of Freddie Mac's claim, as well as Deloitte's affirmative defense of Freddie Mac's proportionate fault for its claimed loss.

**Certain documents withheld from its prior production in the Ocala proceedings based on qualified privileges:**  FHFA has withheld more than 2000 documents from its prior Ocala Production based on qualified privileges.  FHFA has listed these documents in privilege logs and does not appear to challenge their relevance.  Ex. C.  Of these 2000+ documents,

Deloitte has identified 104 that are highly relevant—and indeed critical—to the action, such that "good cause" exists to overcome any applicable qualified privilege(s). *See* Section III.C.4 *infra*.

The above documents Deloitte has requested from FHFA are unquestionably highly relevant to the Freddie Mac Action and warrant production accordingly.

### B.   Deloitte's Requests Are Appropriately Tailored To Obtain Relevant Discovery Without Unduly Burdening The Agency

Deloitte has made every reasonable effort to cabin its requests to FHFA and then, without any obligation to do so, has volunteered to absorb FHFA's costs to review, collect, and produce the custodial data FHFA is providing.   Under these circumstances, FHFA's objections to Deloitte's requests as overly broad and unduly burdensome hold no water.

### 1.   FHFA Cannot Demonstrate That The Burden Imposed By Deloitte's Narrowed Requests Is "Undue"

A "responding party cannot 'merely state, in conclusory fashion, that [document] requests are unduly burdensome." *Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 246 (D.D.C. 2003) (citation omitted); *see, e.g.*, *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 354 (D.D.C. 2011) (denying motion to quash).  Rather, a court should "entertain[] the burdensome objection only when the responding party demonstrates how" a request "is 'overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.'" *Id.* (citation omitted); *see also Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012) ("Objections that state that a discovery request is 'vague, overly broad, or unduly burdensome' are, standing alone, meaningless and do not comply with [the Federal Rules].").  In turn, "[t]o determine the level of burden . . . on the responding party, the court 'should balance the need for discovery against the burden imposed on the person ordered to produce the documents.'" *Fisher*, 217 F.R.D. at 246 (citation omitted). Here, the scale tips decidedly in Deloitte's favor.

16

FHFA cannot demonstrate that Deloitte's narrowed requests impose any significant—much less undue—burden. Deloitte has made every reasonable effort to appropriately tailor and prioritize its requests, and has invited iterative productions by the Agency. As it stands, in fact, Deloitte has asked FHFA to conduct only a narrow search of previously collected custodial data, and to provide four discrete tranches of highly relevant documents, as well as an Agency report stemming from an investigation into Freddie Mac's risk management concerning TBW.[10] Whatever the burden imposed by Deloitte's Subpoena as a whole, these requests plainly do not pose a substantial—let alone "undue"—burden. That is especially so given Deloitte's agreement to assume as much as $15,000 of FHFA's expenses to facilitate production.

### 2. The Law Does Not Require Deloitte To Exhaust All Other Avenues Of Discovery Before Seeking FHFA's Relevant Documents

FHFA's claim that Deloitte must exhaust its efforts to obtain documents from other parties and third parties before seeking FHFA materials is contrary to law. Courts have rejected the view that a party "first must attempt to compel production from" an opposing party or "other non-parties" that purportedly "would prove better sources" of discovery before a third party's compliance is required. *In re Exxon Valdez*, 142 F.R.D. 380, 382 (D.D.C. 1992). A basic "problem with [FHFA's] argument," as the *Exxon Valdez* Court explained, "is that it is far from obvious that obtaining discovery on these issues elsewhere would in fact be more convenient, less burdensome, or less expensive than obtaining it directly from" the Agency. *Id.*

FHFA has itself asserted that many of the "reports and records gathered or created by" the Agency "in the course of performing [its] regulatory responsibilities" should be "deemed

---

[10] As discussed in Section III.C *infra*, Deloitte has also requested the production of certain documents withheld based on qualified privileges. Having previously collected and reviewed these documents, production to Deloitte imposes no burden on FHFA.

[FHFA's] records," and that even if Freddie Mac had the information requested, it could provide it "only with the permission of" the Agency. *Schreiber*, 11 F.3d at 222. Against that backdrop, there is no guarantee Deloitte could secure the documents at issue from Freddie Mac or other entities—let alone in a more convenient and less expensive manner.

As a practical matter, moreover, the discovery period in this case does not afford Deloitte the luxury of sequencing the many party and third-party discovery requests needed to develop its defenses. Finally, even assuming *arguendo* some of the information Deloitte seeks is available elsewhere, FHFA's role as a *Fabre* defendant attaches independent value to confirming what documents the Agency itself possesses—and, correspondingly, *what* FHFA knew and *when*.

### C.     FHFA's Blanket Invocation Of The Qualified Deliberative Process And Bank Examination Privileges Cannot Stand

In addition to its sweeping burden objections, FHFA claims that the deliberative process and bank examination privileges shield its most relevant documents—more than 2100 in total—from discovery. In order "to properly assert [a] privilege," FHFA "must 'establish a formal, considered, detailed claim of privilege,'" *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 4 (D.D.C. 2010) (citation omitted), and "bears the burden of demonstrating [its] applicability . . . with 'reasonable certainty,'" *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010) (citation omitted). Specifically, the Agency "must adduce competent evidence in support of its claims," and "must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel." *Id.* at 33-34. "[B]ecause withholding of otherwise discoverable information 'serves to obscure the truth,' a privilege 'should be construed as narrowly as is consistent with its purpose.'" *Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214, 1216 (M.D. Fla. 2013) (citation omitted).

Here, even if FHFA could establish that the deliberative process and bank examination

privileges apply at the first step (which it cannot), these qualified privileges can—and should—be set aside for good cause.  This Motion seeks the production of the following four discrete categories of documents, comprising 66 documents in total, described on the privilege log accompanying the Ocala Production as concerning:

1) A "TBW employee complaint" (e.g., FHFA_0011819);

2) A "TBW Investigation" or "TBW and Colonial Investigation" (e.g., FHFA_0013468);

3) TBW repurchases (e.g., FHFA_0017030, FHFA_0019496, FHFA_0019518); and

4) TBW counterparty risk (e.g., FHFA_0013898, FHFA_0014861).[11]

### 1.     FHFA Has Not Presented Competent Evidence To Establish The Deliberative Process Privilege

The deliberative process privilege "protects the internal decisionmaking processes of the executive branch in order to safeguard the quality of agency decisions." *Nadler v. DOJ*, 955 F.2d 1479, 1490 (11th Cir. 1992).  It thus shields from disclosure "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  However, the privilege "clearly has finite limits," *EPA v. Mink*, 410 U.S. 73, 87 (1973), and must be "narrowly drawn," *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984).  It applies only if a document is both (1) "pre-decisional, i.e., 'prepared in order to assist an agency decision maker in arriving at his decision,'" and (2) "deliberative, 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'"  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1263 (11th Cir. 2008) (quoting *Renegotiation*

---

[11] The entries falling into these four categories are highlighted in the Ocala Production privilege logs attached hereto as Exhibit C, with a distinct color corresponding to each category.

*Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)); *see also Citizens for Responsibility & Ethics in Washington v. DOJ*, 955 F. Supp. 2d 4, 17 (D.D.C. 2013) (same). FHFA has not met its dual burden here.

As an initial matter, FHFA has not asserted its privilege claims with particularity. "In this Circuit, the proper invocation of the privilege requires" not only "a formal claim of privilege by the head of the department possessing control over the requested information" and "an assertion of the privilege based on actual personal consideration by that official,"[12] but also a "*detailed specification* of the information for which the privilege is claimed, along with an *explanation* why it properly falls within the scope of the privilege." *Cobell v. Norton*, 213 F.R.D. 1, 7 (D.D.C. 2003) (citation omitted) (emphasis added). For the most part, FHFA's logs contain conclusory descriptions of the documents withheld as "reflect[ing] agency options, author's opinions, author's analysis, and recommendations" where the deliberative process privilege is invoked; or as "contain[ing] communications between the agency and the regulated entity during the course of examination activities" where the bank examination privilege is invoked. But FHFA cannot baldly claim that its documents reflect policy deliberations or meaningful examinations of regulated entities; it must set forth facts *demonstrating* as much. FHFA's bare-bones descriptions fail to do so. Even before assessing whether good cause exists to overcome any privilege that might otherwise attach, FHFA's privilege claims fail as to contested documents that are described only in such vague or conclusory terms.

Moreover, FHFA's attempt to withhold virtually every substantive internal document and communication contravenes the settled principle that the deliberative process privilege must "be construed 'as narrowly as consistent with efficient Government operation.'" *Wolfe v. Dep't of*

---

[12] It is not apparent whether FHFA has complied even with these threshold requirements.

*Health & Human Servs.*, 839 F.2d 768, 773-74 (D.C. Cir. 1988) (citation omitted).  Contrary to FHFA's view, "the privilege does not protect a document which is merely peripheral to actual policy formation." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277-78 (11th Cir. 2004) (citation omitted).  Rather, the privilege applies solely to documents that "make recommendations or express opinions on *legal or policy matters*." *Fla. House of Representatives v. United States Dep't of Commerce*, 961 F.2d 941, 945 (11th Cir. 1992); *see also Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989) (the privilege "is properly applicable only to communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials"); *see also, e.g., Sun-Sentinel Co. v. U.S. Dep't of Homeland Sec.*, 431 F. Supp. 2d 1258, 1277-78 (S.D. Fla. 2006) (privilege inapplicable where internal FEMA e-mails "contain[ed] advice and opinions for [agency director] to consider," but such advice had "no relationship to a policy matter or a decision regarding the formulation of FEMA policy").

Here, FHFA has not identified any specific "policy" decision or formulation on which the contested documents directly bear.  Instead, the documents at issue appear to concern the Agency's day-to-day operations.  For example, FHFA has withheld approximately 17 documents "discussing [a] TBW employee complaint" or "FRE [Freddie Mac] employee complaint." *See, e.g.*, Ex. C (FHFA_0011819-46, FHFA_0014635-36).  In meet-and-confers, counsel for the Agency explained that this "employee complaint" refers to the "tip" FHFA received in 2008 of potentially fraudulent activities at TBW.  But the Agency has not explained, nor is it apparent on the face of the logs, how the receipt of (or even discussion about) a whistleblower tip relates to actual "policy formulation."  On the contrary, even broadly construed, it is difficult to conceive of these (and similar) documents as any more than "merely peripheral to actual policy

formation." *Moye*, 376 F.3d at 1277-78. That tenuous connection is insufficient to sustain the Agency's privilege claims.

Further, even if related to agency deliberations in the abstract, "purely factual material is not protected." *Ascom*, 267 F.R.D. at 4; *Mink*, 410 U.S. at 87-88 ("[M]emoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery."). Agencies therefore "must disclose those portions of predecisional and deliberative documents that contain factual information that does not 'inevitably reveal the government's deliberations.'" *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010) (citation omitted). Tellingly, FHFA has produced less than *100* redacted documents, while withholding multiple *thousands* in their entirety. Unless "redacting the portions of the documents that reveal deliberations is impossible," *Ascom*, 267 F.R.D. at 4, the Agency's refusal to disclose these documents even in redacted form cannot be defended.

Indeed, many of the contested documents withheld by FHFA appear to be largely—if not wholly—factual in nature. *See, e.g.*, Ex. O (citing FHFA_0013468-72 ["Email chain discussing TBW and Colonial Bank investigation."], FHFA_0013474-77 [same], FHFA_0014041-42 ["Email discussing TBW delinquency update."]). "[I]t is well-established that discussions of objective facts, as opposed to opinions or recommendations, are not protected by the privilege." *Cobell v. Norton*, 213 F.R.D. 1, 6 (D.D.C. 2003). As described, the documents in question fall squarely outside any privilege—and must, therefore, be produced.

### 2.   FHFA Has Not Presented Competent Evidence To Establish The Bank Examination Privilege

FHFA's reliance upon the *bank* examination privilege is nearly unprecedented—and should be rejected. The bank examination privilege is, in some sense, "an aspect of . . . the

'deliberative process privilege.'" *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 633 (D.C. Cir. 1992).[13]  "[L]ike the deliberative process privilege, [it] shields from discovery only agency opinions or recommendations; it does not protect purely factual material." *Id.* at 634.  But the privilege, as its name suggests, has long been limited to depository banks and their financial regulators— which Freddie Mac and FHFA, respectively, plainly are not.

Although "courts have long recognized that the report of a *bank examiner* is protected by a qualified privilege," *Id.* at 633 (emphasis added), FHFA's reliance upon that privilege is unfounded.[14]  Congress did not vest FHFA (or OFHEO) with regulatory responsibilities over depository banks—the threshold hook for the privilege's potential application.  *See Delozier v. First Nat'l Bank of Gatlinburg*, 113 F.R.D. 522, 526 (E.D. Tenn. 1986) (the privilege prevents the risk of "unduly undermin[ing] confidence in *the bank*" (emphasis added)).  Further, the policy concerns undergirding the privilege are inapposite where, as here, FHFA (1) has taken conservatorship of the entities it regulates, and, (2) as required by statute, issues publicly-available, annual reports concerning its oversight of Freddie Mac to Congress.  Under the circumstances, an expansion of the bank examination privilege is unnecessary and inappropriate.

Regardless, even if the bank examination were potentially available, FHFA has not established the requisite elements with enough particularity to sustain its claims.  *See supra*

---

[13] "Neither the Eleventh Circuit"—where the Freddie Mac Action is pending—"nor the Supreme Court has explicitly recognized a bank examination privilege." *Raffa v. Wachovia Corp.*, No. 8:02-CV-1443-T-27, 2003 WL 21517778, at *2 (M.D. Fla. May 15, 2003); *see also In re Banco Santos, S.A.*, No. 10-bk-47543, 2014 WL 5655025, at *5 (S.D. Fla. Oct. 31, 2014).

[14] To Deloitte's knowledge, just a single court—addressing an admittedly "new situation"—has adopted FHFA's view of the potential applicability of the bank examination privilege. *See FHFA v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 272 (S.D.N.Y. 2013) ("The parties do not cite, and the Court has not found, any authority . . . speaking directly to the question of whether FHFA may assert the bank examination privilege.").

Section III.C.1. Critically, "the district court must determine . . . in each case whether some portion of the bank examination reports" at issue "are factual in nature and thus outside the privilege." *Schreiber*, 11 F.3d at 221 (observing that "every court that has examined the nature of bank examination reports thus far has found them to be at least partly factual"). FHFA has not provided sufficient information to support a privilege in this context, and the information the Agency *has* provided suggests many of the contested documents are factual in nature. *See generally* Ex. C. FHFA's privilege claims should thus be rejected.

### 3. These Privileges Do Not Apply Because FHFA's Conduct Is At Issue In This Litigation

Ultimately, this Court need not reach the question whether FHFA has carried its burden to establish each element of these privileges with particularity. Where an agency's deliberative or examination process is *itself* at issue, these qualified privileges are inapplicable. *See Ala. Educ. Ass'n v. Bentley*, No. CV-11-S-761, 2013 WL 124306, at *16 (N.D. Ala. Jan. 3, 2013) ("A number of courts have held that the deliberative process privilege does not apply in actions where the government's decision making is central to the . . . case." (citations omitted)). Here, because FHFA's deliberations and its examinations of regulated entities are relevant in and of themselves, "the privilege does not enter the picture at all." *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1425 (D.C. Cir. 1998). Further, these privileges "disappear[] altogether when there is *any* reason to believe government misconduct occurred." *Alexander v. FBI*, 186 F.R.D. 170, 177 (D.D.C. 1999) (citation omitted); *see In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997). Both exceptions squarely apply here.

As noted, Deloitte has identified FHFA as a potential *Fabre* defendant. The question of *what* FHFA knew about the fraud that ultimately led to Freddie Mac's alleged loss—and *when* it knew that information—is central to the case. On that score, review of publicly-available

information and the limited documents Deloitte has received thus far suggests FHFA may have acted negligently in its oversight of Freddie Mac. In June 2008, for example, while the fraud was still ongoing, the Agency learned that "TBW was fraudulently selling loans to Freddie that TBW had not yet purchased, and that TBW was using the proceeds paid by Freddie to re-pay advances." Ex. E, FHFA-OIG, *Audit of the Federal Housing Finance Agency's Consumer Complaints Process*, AUD-2011-001, at 11 (June 21, 2011). The tip thus disclosed the core fraud that later emerged. The FHFA-OIG has chastised FHFA, as these "serious allegations of fraud" were "neither pursued to completion" nor "referred to law enforcement authorities for evaluation or possible investigation." *Id.* Documents bearing on these and related issues (including FHFA's decision *not* to take action), as reflected in FHFA's privilege logs, are critical to Deloitte's ability to mount a full and fair defense.

### 4. Given The Vital Importance Of The Documents At Issue, Good Cause Supports Setting Aside The Asserted Qualified Privileges

By the same token, Deloitte's specific need for the documents at issue warrants setting aside any cognizable claims of privilege. As qualified privileges, the deliberative process and examination privileges are not absolute and "may be overridden" for good cause, including to promote "the paramount interest of the Government in having justice done between litigants." *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d at 633-34 (citations omitted); *see also Kearney Partners Fund, LLC v. United States*, No. 2:10-CV-153, 2013 WL 1966967, at *5 (M.D. Fla. May 13, 2013) ("The deliberative process privilege is a qualified privilege and may be overcome where there is a sufficient showing of a strong need that outweighs the reasons for non-disclosure"). "[C]ourts must balance the public interests at stake in determining whether the privilege should yield in a particular case, and must specifically consider the need of the party seeking privileged

evidence." *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997).

"At minimum," such "ad hoc" balancing requires this Court to consider:

(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*First E. Corp. v. Mainwaring*, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994).  Under the facts, all of these factors militate strongly in favor of production.

a.    **The Requested Documents Are Essential To Deloitte's Defenses In The Freddie Mac Action**

First, as established, the documents at issue are squarely relevant to Deloitte's defenses in the Freddie Mac Action.  In deciding whether the government's interest in secrecy should yield, "the interest of the litigants, and ultimately of society, in accurate judicial fact finding" is "[f]oremost."  *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. 577, 582-83 (E.D.N.Y. 1979) ("'[T]he potential value to the private litigant of the requested production' must be carefully weighed[.]" (citation omitted)).  The narrow sets of documents Deloitte has identified are critical to its defenses, as explained below.

**Ocala Production documents described as "discussing [a] TBW employee complaint":**  These documents are critical to understanding FHFA's awareness of fraud at TBW, as well what the Agency understood about the alleged fraud and whether (and, if so, when) FHFA communicated its concerns to Freddie Mac.  As noted, Florida law dictates that Deloitte's liability (if any) must be reduced according to the relative fault of others—including FHFA.  It is well established in public reports that the Agency was informed of "serious allegations of fraud" at TBW as early as June 2008 and failed to follow up on those allegations.  Ex. E, FHFA-OIG, *Audit of the Federal Housing Finance Agency's Consumer Complaints*

*Process*, AUD-2011-001, at 11 (June 21, 2011).  But in order to fully assess FHFA's role in relation to Freddie Mac's claimed loss, Deloitte needs access to the underlying materials specifically evidencing the Agency's knowledge of wrongdoing and its apparent decision not to take corrective action.  Moreover, Deloitte expects that these documents will reflect the extent to which Freddie Mac itself was, or should have been, aware of fraud at TBW while Freddie Mac was *expanding* its TBW portfolio—and, in turn, the extent to which Freddie Mac assumed certain risks and justifiably relied on Deloitte's audits.

**Ocala Production documents described as relating to FHFA's "TBW Investigation" or "TBW and Colonial Investigation":**  Based on discussions with FHFA's outside counsel, Deloitte understands that documents in the fourth category pertain to an investigation into Freddie Mac's risk management concerning TBW.  That investigation culminated in a report, which Deloitte has also requested from the Agency—in addition to contested documents appearing on the privilege logs.  Good cause supports producing these materials in their entirety.

**Ocala Production documents described as relating to TBW repurchases, and TBW counterparty risk:**  The entire factual predicate for Freddie Mac's claimed loss is an inability to "put back" to TBW—that is, require TBW to repurchase—certain of the loans Freddie Mac held when TBW entered bankruptcy.  But FHFA itself has concluded that Freddie Mac effectively ignored numerous "red flags" that could and should have alerted it to the fraud and to the risks of buying mortgages from TBW.  According to FHFA-OIG:

> Freddie Mac's interaction with … [TBW] illustrates the risks associated with the failure of a high-risk or high-volume counterparty.  FHFA's review of Freddie Mac's business with TBW found that TBW was undercapitalized, underperforming, and carried too much debt. The Enterprise placed the counterparty on its high-risk watch list in December 2007.  Nonetheless . . . Freddie Mac increased its volume of business with TBW from over \$43 billion to approximately \$52 billion at the end of 2008 and its corresponding risk exposure increased from almost \$64 million to about \$244 million at the end of 2008.  In

27

August 2009, when the [FBI] executed a search warrant at TBW's headquarters as part of a criminal fraud investigation, total business volume stood at approximately $49 billion and total exposure was around $702 million.

Ex. P, FHFA-OIG, *FHFA's Oversight of the Enterprises' Management of High-Risk Seller/Servicers* at 12 (Sept. 18, 2012).  Consistent with FHFA's findings, Deloitte has asserted as a core defense that Freddie Mac "knew, or was constructively aware, of the existence of the fraud . . . and/or the risk that Freddie Mac could sustain losses on mortgage loans purchased from TBW that far exceeded the financial capacity of TBW."  FHFA's documents related to these issues are thus essential to analysis of Freddie Mac's alleged damages, and Deloitte's defenses.

**An unredacted copy of FHFA Office of Governance Report, Freddie Mac Key Management Assessment (Sept. 26, 2008), and documents relating to this report:**  As established above, see Section III.A *supra*, this report concluded that Freddie Mac's senior officials disregarded its own credit risk function's advice and deliberately prevented that function from participating in key investment decisions.  So too as to purchases of TBW loans.  There thus exists good cause to see a copy of this report and the documents supporting its conclusions.

### b.   Evidence From FHFA In Particular Is Critical To Deloitte's Defenses

Evidence in *FHFA's possession* is particularly crucial to Deloitte's defenses.  Even if related to the same subject matter, "other evidence" necessarily cannot provide the same direct proof of what FHFA or OFHEO knew at a given point, and what Freddie Mac communicated to or learned from its regulator and conservator.  By definition, FHFA is best—and likely exclusively—positioned to provide information about the actions of Agency personnel.  Moreover, FHFA's extensive review of Freddie Mac's risky conduct in relation to TBW makes FHFA's documents uniquely important in developing a full understanding of the extent to which Freddie Mac is responsible for its own alleged losses.  Because the discrete materials Deloitte

has identified carry particular import relative to information Deloitte might obtain from other sources, production from FHFA is warranted.

c.    **FHFA's Active Role In The Freddie Mac Litigation Supports Production**

FHFA's role in the Freddie Mac Action weighs overwhelmingly in Deloitte's favor. As established, FHFA is far from a disinterested third party. Quite the contrary. The Agency wields extensive—and arguably comprehensive—control over the plaintiff, Freddie Mac. As FHFA-OIG recently explained, this "sweeping" authority "position[s] FHFA to potentially control *every aspect*" of Freddie Mac's actions and operations. Ex. A, FHFA-OIG, *FHFA's Conservatorships of Fannie Mae and Freddie Mac: A Long and Complicated Journey*, WPR-2015-002, at 6 (Mar. 25, 2015) (emphasis added). In fact, the Agency's own Director recently acknowledged that "FHFA is involved in 'virtually every decision that . . . Freddie Mac make[s]." *Id.* Given that substantial relationship, FHFA's invocation of its *formal* status as a non-party rings hollow. Indeed, the Agency unquestionably has an interest in the outcome of Freddie Mac's claims.

Consistent with its oversight of Freddie Mac, moreover, FHFA has assumed an active role in the Freddie Mac Litigation. The parties' negotiation of an agreed-upon protective order to govern discovery and the exchange of documents was delayed precisely because *FHFA* demanded certain provisions to serve the Agency's interests. For example, the protective order now allows Freddie Mac to share certain of Deloitte's confidential discovery material with "FHFA's in-house and outside counsel, experts, and consultants who become involved in the prosecution or defense of this Proceeding." Protective Order ¶ 25(e), Dkt. 37 (Jan. 26, 2015). As a result, FHFA enjoys potentially broad access to the confidential documents of *both* parties to the Freddie Mac Action. And yet, the Agency remarkably is withholding its own relevant documents. Under the circumstances, production is entirely warranted.

29

### d.     The Remaining Factors Favor Production

The remaining factors also powerfully favor setting aside FHFA's qualified privilege claims, to the extent any privilege applies. With more than $1 billion at stake, there is no dispute as to the seriousness of the Freddie Mac Litigation. *See supra* Section II.A. More than that, the question of FHFA's regulatory conduct concerning one of the largest mortgage frauds in the past decade carries significant *public* import.

Finally, FHFA can point to no particularized risk that providing the requested information will stifle candid communications among Agency employees in the future. As a general matter, "the public is entitled to know what its government is doing and why." *Lee v. FDIC*, 923 F. Supp. 451, 456 (S.D.N.Y. 1996) (requiring disclosure where FDIC had not alleged that documents were "so candid or personal in nature that public disclosure" was "likely in the future to stifle honest and frank communication within the agency"). Here, FHFA-OIG already has issued numerous public reports discussing—and often criticizing—FHFA's regulation of Freddie Mac and its conduct in connection with TBW. Further, the Agency is expressly covered by the protective order in the Freddie Mac Action. Under these circumstances, disclosure poses no meaningful risk of harm.

## IV.     CONCLUSION

For the foregoing reasons, Deloitte respectfully requests an Order compelling FHFA to comply with Deloitte's pending Subpoena as outlined herein.

### Local Rule 7(m) Certification

Counsel for Deloitte has conferred with counsel for FHFA concerning the relief sought in a good faith effort to resolve the issues raised in this Motion, but has been unable to reach an agreement. After meeting and conferring at length, FHFA has refused to produce the documents as to which Deloitte now seeks to compel production.

## **REQUEST FOR ORAL HEARING**

Pursuant to Local Rule 7(f), Deloitte respectfully requests an oral hearing on this Motion.


Dated:  May 8, 2015                                  LATHAM & WATKINS LLP
Washington, D.C.

By _____
   Christopher S. Turner
   D.C. Bar No. 494637
   555 11th Street, NW, Suite 1000
   Washington, D.C.  20004-1304
   Telephone: (202) 637-2200
   Facsimile:  (202) 637-2201
   Email: christopher.turner@lw.com

*Attorney for Defendant Deloitte & Touche LLP*

31

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2015, I served the foregoing Motion to Compel Document Production by the Federal Housing Finance Agency via hand-delivery upon the following, with electronic delivery to all counsel of record in the Freddie Mac Action:

> Joseph J. Aronica
> Duane Morris LLP
> 505 Ninth Street, N.W., Suite 1000
> Washington, D.C. 20004-2166
>
> *Attorney for Federal Housing Finance Agency*

By _____

> Christopher S. Turner
> D.C. Bar No. 494637
> 555 11th Street, NW, Suite 1000
> Washington, D.C.  20004-1304
> Telephone: (202) 637-2200
> Facsimile:  (202) 637-2201
> Email: christopher.turner@lw.com
>
> *Attorney for Defendant Deloitte & Touche LLP*